UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN COLLIAS,

    Plaintiff,

v.

ROAD COMMISSION
FOR OAKLAND COUNTY,

    Defendant.
    _____/

Case No. 09-cv-12483

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT** (docket no. 15) **AND
GRANTING DEFENDANT'S MOTION TO FILE LATE REPLY BRIEF** (docket no. 18)

In this employment action, John Collias claims that the Road Commission for Oakland County ("Road Commission") both interfered with his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. 2601, *et seq.*, and terminated him in retaliation for his exercise of those rights. Discovery has closed and the Road Commission has moved for summary judgment on all claims.[1] For the reasons stated below, the Court will grant the motion.

**BACKGROUND FACTS**

In accordance with the standards for summary judgment, the following facts are either undisputed or, if disputed, stated in the light most favorable to Hill. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Collias began working for the Road Commission as a laborer in 1997. Collias dep. 6-7. At the time he was terminated, he was working as a guardrail installer. *Id.* at 8. On

---

[1] The Road Commission seeks leave to file a late reply brief, which Collias opposes. Collias identifies no prejudice that would befall him were the Court to permit the late filing. The Court will grant leave, and will accept the late brief as timely filed.

three occasions from May through June 2008, Dr. James Stepanski, Collias's family doctor, issued Disability Certificates stating that Collias was under his professional care, and was "totally incapacitated"[2] from May 16 to August 1, 2008. *See* Def.'s Mot. exs. B, C, & D. Collias testified that the basis for the Disability Certificates was a combination of sleep apnea, upset stomach, and anxiety. Collias dep. 14. Dr. Stepanski's statement at the bottom of the Extended Sick Leave Claim Form later submitted by Collias states that Collias suffered from "insomnia, obstructive sleep apnea, GERD,[3] [and] anxiety." Def.'s Mot. ex. E. Collias was excused from work during this period of total incapacitation.

Also during this time Collias applied for, and later received, extended sick leave benefits offered by the Road Commission. Collias dep. 18-19. These benefits are independent from, and more favorable than, those benefits required by the FMLA. Specifically, the FMLA requires employers to provide eligible employees with up to twelve weeks of *unpaid* leave during any twelve-month period. 29 U.S.C. § 2612(a)(1). The Road Commission's extended sick leave benefits, by contrast, provide employees with 50% of their salary for up to 52 weeks. Carr dep. 48. The Road Commission runs its benefits concurrently with FMLA benefits. *Id.* Human Resources Manager Linda Carr testified that every benefit an employee receives under the FMLA is also received under the Road Commission's extended sick leave benefits program. *Id.* at 50. Due to an administrative oversight, however, Collias was technically never placed on FMLA leave while on leave under the Road Commission's leave program. *Id.* at 10.

---

[2] The certificate contains a checkbox next to the phrase: "TOTALLY INCAPACITATED". The box is checked. The certificate also contains a checkbox for PARTIALLY INCAPACITATED, which is unchecked.

[3] GERD is an acronym for gastroesophageal reflux disease.

Since 1989, Collias has owned and operated a sealcoating[4] business. Collias dep. 39-40. While Collias was on leave, Mark Goemeare, one of Collias's supervisors at the Road Commission, reported to Gary Piotrowicz, Director of Traffic Safety, that he believed Collias may be working at his sealcoating business while on leave. Piotrowicz dep. 26. Piotrowicz reported this to Linda Carr in Human Resources, and told her she should arrange for surveillance of Collias's on-leave activities. *Id.* at 27; Carr dep. 15. Carr testified that there is no policy at the Road Commission that would prevent a person from working at his own business while working for the Road Commission, but that by signing the extended sick leave claim form, the applicant was stating that he was unable to work due to a disability. *Id.* at 15-16. Carr arranged for the investigative surveillance through the Road Commission's risk management department. *Id.* at 17.

A third-party private investigation service performed surveillance on Collias's activities and prepared a report of its findings.[5] Carr testified that there were activities noted in the report that indicated Collias was working at his business while on leave. *Id.* at 20. Specifically, Collias was wearing white gloves and sweeping or raking a driveway. *Id.* at 19-20. Piotrowicz also testified that his review of the report indicated that Collias was

---

[4] Sealcoating is the application of a sealant, usually a coal-tar or asphalt-type emulsion, to preserve, protect, and beautify asphalt pavements. It is generally used on low traffic streets or off-street locations.

[5] Collias objects to the admissibility of the surveillance report on hearsay grounds. Pl.'s Resp. Br. 7. But the report is not being offered here for the truth of the matter asserted therein. That is, it is not being offered to prove that Collias was in fact working -- Collias admits he was working -- but rather to show *why* the Road Commission took the actions it did, i.e., to demonstrate its reasonable belief that Collias was working. *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009) ("A statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay.")

working, despite the fact that his Disability Certificates stated that he was "totally incapacitated" at the time. Piotrowicz dep. 97-100.

Carr testified that the Road Commission interprets the federal regulation defining "incapacity" as the inability to perform *any* type of work, not just the type of work the employee performs for the employer.[6]  Carr. dep.44-45.  She testified that the Road Commission would accommodate employees having partial incapacities if they needed light-duty work.  *Id.* at 42.  She also testified that the Road Commission's leave benefits may be provided to employees for reasons unrelated to any physical inability to work, such as a psychological injury, so long as the employee is unable to work because of the injury. *Id.* at 43.

In addition to reviewing the surveillance report, the Road Commission sent Collias to an independent medical examiner, Dr. Gonte, who later told the Road Commission that nothing physical prevented Collias from working, and that he could be suffering from depression unrelated to his job as a guardrail installer.  *Id.* at 42.

The Road Commission also held a fact-finding meeting where labor counsel for the Road Commission questioned Collias about his work with his sealcoating business while on leave.  Collias initially indicated that he did not recall doing anything physical for his business while on leave, but later stated that "I wouldn't let my seal coat go down the drain." Tr. 6-7 (Def.'s Mot. ex. I).  Carr testified that the fact-finding meeting substantiated Collias's work activities while on leave. Carr dep. 25.  Piotrowicz testified that during the meeting, Collias was "uncooperative," "not forthcoming", and "evasive to answering

---

[6] FMLA implementing regulations define "incapacity" as "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom."  29 C.F.R. § 825.113.

4

questions". Piotrowicz dep. 17-18, 62. When Collias was asked at the meeting whether it was possible that he had been "actively running this business showing up, doing seal coat work yourself, taking bids from customer, and you have been doing it for weeks," Collias responded, "I don't remember." Tr. 5.

Collias testified that his sister was running his sealcoating business while he was on leave, but he also admitted that he had done work for his business while on leave. Collias dep. 49-50. Specifically, he returned phone calls, answered various questions, and demonstrated the process of spreading sealcoating to other employees. He estimated that he worked from zero to ten hours per week at his business while on leave. *Id.* at 51

The Road Commission fired Collias on July 24, 2008. Def. Mot. ex. G. The termination memorandum given to him states: "This action is based on the outcome of our investigation into you fraudulently receiving sick leave (extended illness disability) benefits while working during your reported period(s) of disability." *Id.* Piotrowicz, who authored the memorandum, testified that "fraudulently receiving sick leave benefits," means that "in order to claim extended sick leave you have to claim some form of illness that prevents you from working at the road commission, and then at the same time he was working from some – for his own business." Piotrowicz dep. 87. Piotrowicz also believed Collias's actions were fraudulent because Collias submitted Disability Certificates indicating that he was totally incapacitated, but was found to be working at his business, thereby demonstrating that he was not totally incapacitated. *Id.* at 152-53.

Piotrowicz testified at his deposition as follows:

Q. Did you ever consider as listed on Exhibit 6 [extended sick leave claim form] the restrictions that are the – the illness that the doctor mentions of insomnia, sleep apnea, gastrointestinal reflux disease and anxiety, did you ever consider whether those would have prevented Mr. Collias from doing his job at the Road Commission

5

MR. PATTERSON: Object to the form the question. He previously testified he never saw Exhibit 6 prior to this. Go ahead and answer it if you can.

THE WITNESS: Yeah, I never saw that until now.

BY MR. WILLIAMS:

Q. When did you find – when did you ever ask – and you said you've never seen that until now. You never had a full idea of what Mr. Collias' condition was until now, correct?

A. Well, a full, no.

Q. You never did –

A. Not in its entirety.

Q. And you terminated Mr. Colllias without ever fully knowing why he was off on sick leave, correct?

MR. PATTERSON: Object to form.

THE WITNESS: No I didn't.

BY MR. WILLIAMS:

Q. Okay. How did you know? You stated you never had – you never fully knew why Mr. Collias was out on sick leave, correct, until now?

A. That's correct.

Q. Yet, you made the decision to terminate him without fully knowing, correct?

A. I did not have all this information.

Q. And you made your decision anyway, correct?

A. That's correct.

Q. And you made that decision without having all of Mr. Collias' medical information, correct?

A. Well, during the conversation we had after the fact-finding meeting, if there was an issue relative to whether or not he could have worked, human resources likely would have brought that up.

Q. Did they do that?

6

> A. If they – I would say no, I don't recall it. I would say not, because if they did it would have been an issue of not to fire him. If she would have said, you know what, there's no relationship between these two, we would have a different discussion.
>
> Q. Would that have changed your decision at all, Mr. Piotrowicz?
>
> A. Yes.
>
> Q. How would it have changed your decision?
>
> A. Changed my decision to?
>
> Q. To fire, to terminate. If HR had stepped in and said, there's no relation between these restrictions and what we've observed him –
>
> A. I don't know what the conversation would have been at that time because it didn't come up.
>
> Q. But that didn't happen?
>
> A. Right.

Piotrowicz dep. 108-10.

The three Disability Certificates submitted by Dr. Stepanski, marked the box "TOTALLY INCAPACITATED" each time. In Stepanski's view, "total incapacitation" means that the patient is "not to go to any employer or job that were [sic] performing." Stepanksi dep. 5. Despite being totally incapacitated, however, Collias could perform work such as "work around the house . . . mow the lawn, cut down trees. He could do anything physical, but he just couldn't do anything mental. And that's what his disability was all about, it was mental." *Id.* at 6. Stepanski believed that Collias's mental disability was related to his work at the Road Commission, and that by indicating that Collias was totally incapacitated and could not perform any work, Stepanski did not mean that Collias could not work at his sealcoating business; Collias's disability was related to work with the Road Commission. *Id.* at 6, 9. Strife between Collias and his boss caused Collias stress, making him totally

7

unable to work at the Road Commission. *Id.* at 9-10. When asked why he did not check the box on the extended sick leave claim form indicating that Collias's disability was caused by the patient's current employment, Stepanski stated "Apparently I did the wrong box." *Id.* at 22. The portion of the form completed by Collias indicates "partially" in response to the question of whether the illness or injury arose out of his employment. Def. Mot. ex. E.

## DISCUSSION

I. <u>Summary Judgment Standard</u>

Rule 56 of the Federal Rules of Civil Procedure provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

II. <u>Analysis</u>

"The Sixth Circuit recognizes two distinct theories of wrongdoing under the FMLA." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). The "interference" theory imposes liability for interfering with or denying an employee's exercise of FMLA rights. *Id.* The "retaliation" or "discrimination" theory prohibits an employer from discharging an employee for opposing any practice made unlawful by the FMLA. Although the complaint includes numerous ways in which the Road Commission allegedly violated the FMLA, *see*

Compl. ¶ 15(a)-(f), the parties have narrowed the issues and framed the claims in terms of interference and retaliation.

### A. Interference

It is unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). To prevail on an interference claim, the plaintiff must establish: 1) he is an eligible employee, 2) the defendant is an employer, 3) the employee was entitled to leave under the FMLA, 4) the employee gave the employer notice of his intention to take leave, and 5) the employer denied the employee FMLA benefits to which he was entitled. *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 716, 719 (6th Cir. 2003). The Road Commission agrees that Collias has satisfied the first four elements,[7] and focuses its argument on the last element: whether Collias was denied benefits. Collias received leave benefits offered by the Road Commission that included leave from work plus 50% salary. These benefits are more generous than those required by the FMLA, so necessarily include FMLA benefits. *See* 29 U.S.C. § 2612(a)(1) (eligible employees entitled to *12 weeks **unpaid** leave*). According to the Road Commission, then, even though Collias's leave was not technically designated as FMLA leave because of an administrative oversight, Collias nevertheless was receiving the substance of FMLA benefits because he was granted leave. In these

---

[7] Although the Road Commission quibbles about whether Collias provided sufficient notice of his qualifying disability (the fourth element), it later concedes that it never rejected Collias's claim for leave based on lack of information, but rather provided him with leave benefits that run concurrently with the FMLA benefits. Def.'s Br. 8-9. Moreover, the leave form provided by Collias contained sufficient information to give notice to the Road Commission, even if his disability certificates did not. *See* 29 C.F.R. § 825.303(b) ("An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request."). Accordingly, Collias has affirmatively satisfied the fourth element even if the Road Commission has not conceded it.

circumstances, the Road Commission contends, Collias cannot demonstrate that it denied him any benefits under the FMLA

Collias disagrees that the Road Commission's benefits provide the same or more benefits than does the FMLA, but his arguments are not persuasive. He contends first that the FMLA requires employers to restore employees to the same or an equivalent position upon returning to work. *See* 29 U.S.C. § 2614(a)(1). But the Road Commission provides restoration rights too. *See* Carr dep. 50-51. Collias also contends that the Road Commission does not provide intermittent leave, or leave to care for the serious health condition of a family member. *See* 29 U.S.C. § 2612. But Collias never sought leave for these reasons, so even if the Road Commission does not offer these benefits, the differences are irrelevant here. Therefore, the Court agrees with the Road Commission and concludes that Collias has not established that he was ever denied benefits under the FMLA simply by the Road Commission's failure to designate his leave as FMLA-related. Collias sought medical leave and he was granted it, and that is all the FMLA requires here.

But even if Collias could somehow establish that the Road Commission denied him benefits he was entitled to under the FMLA,[8] his claim of interference would still fail because he cannot demonstrate any prejudice from the denial. 29 U.S.C. § 2617 sets forth the private remedial mechanism of the FMLA. This mechanism includes a requirement that those seeking to recover for substantive FMLA violations demonstrate some kind of harm from the violations. *See* 29 U.S.C. § 2617; *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 726 (6th Cir.

---

[8] Collias also claims that the Road Commission failed to notify him of his rights under the FMLA when it failed to provide him with the necessary FMLA request forms. But even assuming this was a violation of the FMLA, the claim still fails for the reasons stated below.

2003) (noting that pursuant to *Ragsdale*, even when an employee proves a violation under § 2615, § 2617 provides no relief unless employee has been prejudiced by the violation).

In *Ragsdale*, for example, the Court considered a Department of Labor regulation providing that if an employee takes medical leave, "'and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement'" of 12 weeks of leave per year. *Ragsdale*, 535 U.S. at 85 (quoting 29 C.F.R. § 825.700(a)). Ragsdale's employer failed to tell her that 12 of her 30 weeks of medical leave would be counted toward her 12-week entitlement under the FMLA. *Id.* at 85. When she sought 12 more weeks of leave (after having already taken 30), her request was denied and she was fired for absenteeism. *Id.* Relying on Labor's regulation, she sued her employer for denying her request for leave, arguing that the 30 weeks not designated as FMLA leave did not count against her 12-week FMLA entitlement. *Id.*

The Court struck the regulation after finding that it altered the FMLA's remedial mechanism, which requires a showing of harm from an FMLA violation in order to recover in a private action: "[The regulation] relieves employees of the burden of proving any real impairment of their rights and resulting prejudice." *Id.* at 90. In the Court's view, the regulation improperly created an "irrebuttable presumption" that an employer's failure to notify the employee that the leave would count against the FMLA entitlement harms the employee, despite the absence of any empirical or logical basis for the presumption. *Id.* at 90. Ragsdale could not demonstrate any harm from the failure to notify. She could not show, for example, that she would have taken less leave or would have taken intermittent leave had she known she was using up her 12 weeks of FMLA leave when taking leave under her employer's more generous plan. *Id.* Because of her failure to demonstrate

harm, Ragsdale could not recover under § 2617, even if her employer's failure technically violated the FMLA or its regulations. *Id.*

Collias likewise cannot demonstrate any prejudice from the Road Commission's alleged failure to designate his leave as FMLA leave.[9] He received FMLA benefits (leave from work) regardless of whether the leave was formally designated as FMLA-qualifying. Collias has not alleged, let alone demonstrated, in any way how he would have acted had his leave been formally designated as FMLA-qualifying. Nor has he alleged that he would not have taken the leave had it been designated under the FMLA, and had he known about the designation. In fact, Collias was aware nearly two years before he took leave (when he previously took medical leave) that the Road Commission's leave benefits run concurrently with FMLA leave, so he likely believed he was on FMLA leave the second time. *See* Def.'s Br. ex. L; Collias dep. 28-30. In short, Collias has shown no prejudice from any alleged violations.[10]

---

[9] Collias attempts to distinguish *Ragsdale* on its facts by arguing that Ragsdale was granted 30 weeks of leave, but requested an additional 12, whereas Collias was only on leave for nine weeks and never requested an extension beyond the 12 required by the FMLA. The Court views this as a distinction without any difference. The distinction, therefore, does not render inapplicable the more general proposition of law clarified in *Ragsdale*, which is that a plaintiff seeking to recover for an FMLA violation must demonstrate some harm from the violation.

[10] At the motion hearing, counsel for Collias argued for the first time that had Collias been given the proper FMLA forms to complete, the Road Commission would have learned that his diagnosis of "total incapacitation" was psychological in nature, and did not preclude him from working at his sealcoating business. With this knowledge, the Road Commission apparently would have concluded that he did not falsify the leave request, and would not have fired him. Collias is speculating, and has failed to support this belated theory with any evidence or further argument. *See Gooden v. City of Memphis Police Dept.*, 67 F. App'x 893, 895 (6th Cir. 2003) ("Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment." (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

To conclude, even if the Road Commission's failures to designate Collias's leave as FMLA-related and notify him of the designation constitute violations of the FMLA, Collias still cannot recover under an interference theory because he cannot demonstrate any harm from the violations. Accordingly, summary judgment is appropriate on this claim.

B. Retaliation

Collias also claims that the Road Commission fired him for using his FMLA benefits. Because Collias has failed to produce evidence to support a prima facie case of retaliation, the Road Commission is entitled to summary judgment on the retaliation claim as well.

In the absence of direct evidence of unlawful conduct, FMLA-retaliation claims proceed by way of the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bryson*, 498 F.3d at 570. Under this approach, if the employee establishes a prima facie case of retaliation, the employer must come forward with a legitimate non-discriminatory reason for the employee's discharge. *Id.* If the employer articulates such a reason, the plaintiff must then prove that the articulated reason is a pretext for retaliation. *Id.* "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

To establish a prima facie case, a plaintiff must present evidence "from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Macy v. Hopkins County School Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007) (internal quotation marks and citation omitted). One way to establish a prima facie case of retaliation is by showing that 1) the plaintiff was engaged in FMLA-protected activity; 2) he suffered an

13

adverse employment action; and 3) there exists a causal connection between the protected activity and the adverse action. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

The Road Commission disputes only Collias's ability to establish a causal connection between his FMLA leave and its decision to fire him. There is no connection, it asserts, since Collias was fired because he was dishonest about his ability to work, not because he took disability leave. But this is the ultimate question in any employment discrimination case. The Road Commissions's argument jumps ahead to the second and third stages of the *McDonnell Douglas* framework. The employer's legitimate, non-discriminatory reason for firing should not be considered in determining whether an employee has established a prima facie case. *See Cline*, 206 F.3d at 660-61 ("[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff."); *id.* at 661 ("[I]t is . . . inappropriate for the district court in the pre-trial stage to rely on the nondiscriminatory reason for termination to find plaintiff's prima facie case inadequate."); *id.* ("[A] court misapplies the structure of *McDonnell Douglas* by holding that [the plaintiff] fails at the prima facie stage due to defendant's nondiscriminatory reason."); *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (en banc) (indicating that considering employer's alleged reason for termination in analyzing prima facie case "would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination.").

Although the Road Commission's attempt to defeat the causation element of Collias's prima facie case is not availing, a causal connection cannot simply be assumed. Even at

14

the summary judgment stage, where a non-moving party's burden is relatively light, a plaintiff in an employment case still must present evidence from which a reasonable jury could infer unlawful discrimination.  *See Macy*, 484 F.3d at 364.  And this burden includes setting forth evidence from which a jury could find a causal connection between the termination and the protected activity.  *See EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997).

Despite the burden and the Road Commission's challenge in its opening brief to Collias's prima facie case, Collias's response brief contains no discussion whatsoever of a prima facie case.  *See* Pl.'s Br. 5.  Collias instead jumps straight to the third stage of the burden-shifting method and argues pretext.  The Court in unable to determine whether this absence is simply an oversight on the part of counsel, or an implicit recognition on counsel's part that Collias cannot establish a causal connection.  Whatever the reason, the absence of any attempt to demonstrate a prima facie case is grounds by itself for granting summary judgment on the retaliation claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (holding that summary judgment is required when party fails to make a showing sufficient to establish existence of essential element to party's case and on which the party bears the burden of proof at trial); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) ("[T]he plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination.").

In addition to the absence of any argument by Collias, there also exists little to no evidence in the record to support a causal connection.  The only relevant evidence the Court can find from its review of the record is a temporal proximity between Collias's FMLA leave and his discharge.  Collias was fired on July 24, 2008, two months after taking leave, and one week before he was scheduled to return.  In the large majority of cases, however,

15

temporal proximity between exercise of a protected right and an adverse employment action is not enough, by itself, to establish the causation element. *See Vereecke v. Huron Valley School. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010) ("Indeed, we have rarely found a retaliatory motive based only on temporal proximity."); *see also Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir. 2000) ("[W]hile there may be circumstances where evidence of temporal proximity alone would be sufficient to support [an] inference [of retaliation], we do not hesitate to say that they have not been presented in this case.").

The Sixth Circuit recently clarified when temporal proximity can be sufficient to establish a causal connection for purposes of the first stage of the *McDonnell Douglas* framework. In *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516 (6th Cir. 2008), the court stated that "in those limited number of cases . . . where an employer fires an employee *immediately* after learning of a protected activity, we can infer a causal connection between the two actions, even if [the employee] ha[s] not presented other evidence of retaliation." *Id.* at 525 (emphasis added). "[T]he more time that elapses between the protected activity and the adverse employment action, [however,] the more the plaintiff must supplement his claim with 'other evidence of retaliatory conduct to establish causality.'" *Vereecke*, 609 F.3d at 400 (6th Cir. 2010) (quoting *Mickey*, 516 F.3d at 525). So, while there currently exists in the Sixth Circuit a "possibility that, on a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive, . . . often evidence in addition to temporal proximity is required to permit the inference." *Id.*

The case for finding causation from temporal proximity alone was especially strong in *Mickey*, where Mickey's employer fired him the very day it learned he filed a charge with the EEOC. *Id.* at 525. The court reasoned that "if an employer immediately retaliates against an employee upon learning of his protected activity, the employee would be unable

16

to couple temporal proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate the retaliation." *Id.* And "employers who retaliate swiftly and immediately upon learning of protected activity would ironically have a stronger defense than those who delay in taking adverse retaliatory action." *Id.* The court also found that evidence in addition to temporal proximity further supported an inference of discrimination sufficient to establish a prima facie case. *Id.* at 526; *see also Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 447 (6th Cir. 2008) (finding causal connection based solely on timing grounds where employee was suspended just two days after reporting sexual harassment to management).

The facts in this case stand in contrast to those in *Mickey* and *Howington*. Collias was not fired "immediately" or "very close in time" after the Road Commission learned of his leave. Rather, he was fired well into his leave, shortly after the Road Commission learned of his sealcoating activities. Indeed, the temporal proximity between the Road Commission's discovery of his sealcoating activities and his termination certainly do not help his case for causation.[11] *See Vereecke*, 609 F.3d at 401 ("The absence of close temporal proximity and the presence of an obviously nonretaliatory basis for the defendants' decision amount to insufficient evidence to permit an inference of retaliatory

---

[11] The Court is not considering here the validity of the Road Commission's alleged legitimate reason for firing Collias in determining whether there is a prima facie case. *See Cline*, 206 F.3d at 660-61. Rather, the Court is considering only the temporal proximity between the events forming the basis for the employer's alleged reason for firing him and his firing, without considering the validity of the alleged reason. Moreover, the Court is not displacing evidence of causation with evidence of the employer's proffered reason, because there is no evidence of causation to displace. And even if the Court's consideration of the proximity in time between the Road Commission's discovery and Collias's firing is not appropriate in the first stage of the *McDonnell Douglas* framework, Collias still cannot establish a causal connection for the additional reasons stated below.

17

motive."). In addition, Collias took FMLA leave six months before he took the leave at issue here, without incident, which fact also defeats an inference of retaliation. Finally, the fact that the Road Commission provides more benefits to employees than the FMLA requires further defeats any inference that the Road Commission terminated Collias because he exercised rights under the FMLA. If the Road Commission did not want Collias to take leave, they likely would have granted him only the leave required by the FMLA, instead of giving him leave *with* pay. In light of the above evidence, there is not sufficient evidence from which a jury could infer a retaliatory motive on the part of the Road Commission.

For the above reasons, Collias is unable to establish a prima facie case of FMLA retaliation, and there is no need to discuss the remaining stages under *McDonnell Douglas*.

## ORDER

**WHEREFORE,** it is hereby **ORDERED** that the Road Commission's motion for summary judgment (docket no. 15) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Road Commission's motion to file a late reply brief (docket no. 18) is **GRANTED.**

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: December 20, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 20, 2010, by electronic and/or ordinary mail.

Alissa Greer
Case Manager